E. W. Bruno Co., Inc., Respondent, v. Alan Friedberg et al., Appellants.

First Department, June 2, 1964.

*Jay H. Topkis* of counsel (*Martin London* with him on the brief; *Paul, Weiss, Rifkind, Wharton & Garrison,* attorneys), for appellants.

*Edward C. Wallace* of counsel (*Michael K. Stanton* with him on the brief; *Weil, Gotshal & Manges,* attorneys), for respondent.

BOTEIN, P. J.   Plaintiff corporation is engaged in the import and export of a variety of merchandise.   Among the commodities which it imported and distributed in this country were hairbrushes bearing the trade name "Royal Sweden", purchased from a Swedish manufacturing concern referred to by the parties as Husqvarna.   Though plaintiff had no exclusive rights to the American distribution of Husqvarna's output, it had for a decade been the latter's only American customer for hairbrushes.   Over the years, through the medium of a small number of employees and independent sales representatives, plaintiff succeeded in developing a market among retailers and jobbers which in 1960 accounted for $205,000, or about 60%, of the sales of its import department.

In April, 1959, Friedberg, the individual defendant, joined plaintiff's staff as manager of the import department and was given complete charge of it. His employment was "on a month to month basis", terminable by either party on two weeks' notice, and he received a percentage of net profits in addition to a fixed salary. By a letter to Ragnar Corenius, president of Husqvarna, dated June 19, 1959, Friedberg introduced himself as "the man completely responsible for all nation-wide sales of Royal Sweden Brushes"; and, he continued, "I am certainly very much impressed with the splendid business relationship that has been built up between our two companies. I can assure you that I will do everything in my power to continue this relationship on the same level and will be constantly striving to improve it."

In May, 1960, at Husqvarna's invitation and expense and with plaintiff's permission, Friedberg spent five days in Sweden with Husqvarna's officers and, as he testified, "discussed business problems and ways and means of increasing the Husqvarna business in the United States." Friedberg testified that in one of these discussions he was told that "they were thinking of changing their distribution methods in the United States, in that they were going to set up a subsidiary company, that is, subsidiary to Husqvarna Borstfabrik, to market all of their merchandise, brushes, housewares, giftwares, in the United States; and if they did set this up, would I be interested in coming to work for them as a manager." Friedberg asked for a night to think the matter over and next morning responded that he was not interested in a position "as a manager or as an employee" but "if they felt it possible for me to become some sort of a partner in this business, then I would talk about it further." He was told "this is a step that requires discussion with the board, and when they had their board meetings they would discuss it and he [Corenius] would then be in touch with me if there was any further information." During his stay in Copenhagen Friedberg met Henry E. Miller, the plaintiff's president, but neither then nor on their return to this country did he report these conversations to Miller.

In August, 1960, Friedberg telephoned Corenius, having heard nothing from him and being "curious to know if there was any further progress or anything had happened with regard to the short conversation we had concerning their distribution in the United States." Friedberg followed his call with a visit to Sweden in September, pretending to his superiors that he was taking a vacation in a section of New York State where he could not be reached. The culmination of Friedberg's efforts

was the execution in late November of an agreement pursuant to which Friedberg formed the corporate defendant, Montclair Imports, Inc. (Montclair), with himself as its president and sole stockholder, and Montclair became Husqvarna's exclusive selling agent in the United States and Canada, effective January 1, 1961. The arrangements also contemplated a $10,000 loan from Husqvarna to Montclair. On the day the money was in hand, December 9, 1960, Friedberg informed plaintiff that his connection would cease at the turn of the year, since he was going into business for himself. A few days later, when a letter from Husqvarna brought news of plaintiff's replacement by Friedberg, its officers learned for the first time of his scheming and of Husqvarna's intentions. Attempts to restore the former relationships were of no avail, and Friedberg began soliciting the business of substantially all of plaintiff's 534 customers and also induced six of plaintiff's eight sales representatives to act for Montclair instead of plaintiff. Plaintiff then brought this action for permanent injunctive relief and damages. A motion for an injunction *pendente lite* was denied on April 21, 1961, and on December 12, 1963 trial of the plenary suit commenced.

Husqvarna brushes are not of unique quality, and during the pendency of the litigation plaintiff found other sources in Europe able to supply brushes of comparable grade. However, plaintiff suffered the loss of most of its customers to defendants and a severe decline in sales. Because of the imminence of the retirement of the trial judge, time was not taken to develop the extent of plaintiff's monetary claim with particularity; but the parties agreed to a reference if the judgment should be adverse to defendants and require them to account to plaintiff for their profits. Judgment was entered on December 27, 1963. By it defendants are enjoined from selling Husqvarna hairbrushes to any of the 534 former customers of plaintiff or to or through the six sales representatives above mentioned. The judgment also ordered an accounting before a Referee of the profits obtained by defendants, from January 1, 1961 to the date of entry of the judgment, by the sale of Husqvarna hairbrushes to any of the 534 customers. In addition counterclaims by Friedberg for unpaid compensation were dismissed. Defendants have appealed from the judgment.

Friedberg was " ' prohibited from acting in any manner inconsistent with his agency or trust and [was] at all times bound to exercise the utmost good faith and loyalty in the performance of his duties.' " (*Duane Jones Co.* v. *Burke,* 306 N. Y. 172, 187, 188.) That he fully understood the obligations and loyalties he

owed the plaintiff is evidenced by his June 19, 1959 letter to Corenius. The trial court's conclusion that he was faithless to his "positive obligation of fair play and loyalty" (*Nichols-Morris Corp.* v. *Morris,* 174 F. Supp. 691, 697), and that plaintiff's loss of sales is attributable to his recreancy, has firm support in the record. Some argument is made that Husqvarna's abandonment of plaintiff was in any event bound to occur. There is testimony that in May, 1958, Husqvarna expressed some dissatisfaction with the trend of sales, and that in November of the same year a report to Husqvarna by a market research organization included as one of a number of recommendations that Husqvarna "consider replacing or supplementing Bruno as their sole sales representative in the United States." But until Friedberg's catalytic appearance nothing was done. Defendants' contention that the rupture of a 10-year relationship was in any event imminent is based on conjecture only. When Friedberg learned that Husqvarna was considering the possibility of undertaking its own distribution through a subsidiary, unmistakable standards of fidelity required him to inform his employer at once and to collaborate with it in efforts to hold the business (*McCaskey* v. *Cumberland Glass Mfg. Co.,* 188 App. Div. 288, 290). "Above all," it has been said of one in Friedberg's position, "he should be candid with his employer and should withhold no information which would be useful to the employer in the protection and promotion of its interests" (*Community Counselling Serv.* v. *Reilly,* 317 F. 2d 239, 244). Friedberg's concealment deprived plaintiff, intentionally, of the opportunity of setting matters right. We may not assume, in favor of the wrongdoer, that the cause was lost; rather should "'every doubt and difficulty'" be resolved against him (*Michel Cosmetics* v. *Tsirkas,* 282 N. Y. 195, 203).

An injunction, however, seems to us ill-suited to the peculiar circumstances. Ordinarily, injunctive relief would be granted to restrain A from selling to B's customers in the expectation that A's unlawful competition will thereby be eliminated and that B will regain the customers of which A has wrongfully deprived him. But here fulfillment of such an expectation is highly speculative. The interest of the 534 customers has been in Husqvarna brushes, wares advertised and vended under the name "Royal Sweden". Plaintiff has no such brushes to offer them. As there is no suggestion to us that plaintiff has an actionable grievance against Husqvarna, we may not assume that Husqvarna brushes will cease to be available to the 534 customers notwithstanding the restraint upon defendants. Fur-

ther, since plaintiff has acquired new suppliers, we do not know whether it would wish to resume trade with Husqvarna were the latter willing—constituting another unknown factor. Removal of Friedberg as a competitor would, one surmises, be of commercial advantage to plaintiff for some period of time; and perhaps even so indeterminate an advantage should not preclude a decree affecting only Friedberg and Montclair, who have made themselves vulnerable by their conduct. But it is evident that an injunction would also bring about a hurtful, if temporary, disruption of the hairbrush business, not only of Husqvarna, but of the 534 customers and the six sales representatives as well. The endeavor of a court is " ' to adapt its relief to the general equities of the particular situation, as nearly as it is possible to do so.' " (*Ronson Art Works* v. *Gibson Lighter Co.,* 3 A D 2d 227, 231.) Recovery of damages alone is the appropriate and adequate redress here, in our opinion.

The reparation to which plaintiff is entitled is " the amount of loss sustained by it, including opportunities for profit on the accounts diverted from it through defendants' conduct " (*Duane Jones Co.* v. *Burke,* 306 N. Y. 172, 192, *supra*). In other words, so far as profits are concerned, what is to be ascertained by the Referee is " the amount which the plaintiff would have made except for the defendant's wrong " (*Santa's Workshop* v. *Sterling,* 2 A D 2d 262, 267, affd. 3 N Y 2d 757; *Ronson Art Works* v. *Gibson Lighter Co., supra,* p. 232; see *Michel Cosmetics, Inc.* v. *Tsirkas,* 282 N. Y. 195, 200, 202; *Conviser* v. *Brownstone & Co.,* 209 App. Div. 584, 592). In our opinion the present record does not justify the trial court's assumption that the profits defendants made are necessarily " a valid measure " of those plaintiff would have made (see *Dad's Root Beer Co.* v. *Doc's Beverages,* 193 F. 2d 77, 83). The choice of December 27, 1963 as the terminal date for damages appears proper (*Duane Jones Co.* v. *Burke, supra,* p. 192; *Town & Country House & Home Serv.* v. *Newbery,* 3 N Y 2d 554, 562).

The dismissal of Friedberg's counterclaim for unpaid compensation rests not only on the breach of trust already discussed, but on such disloyal acts as destroying orders from customers and failing to place orders with Husqvarna. The record warrants the court's findings of fact and the authorities justify its disposition of the counterclaim (*Lamdin* v. *Broadway Surface Adv. Corp.,* 272 N. Y. 133, 138; *Defler Corp.* v. *Kleeman,* 19 A D 2d 396, 404; *McCaskey* v. *Cumberland Glass Mfg. Co.,* 188 App. Div. 288, 291, *supra*).

The judgment entered December 27, 1963 should be modified, on the law and on the facts, to the extent of deleting the injunctive provisions and of directing the Referee to determine the compensation to which plaintiff is entitled consistently with this opinion, and, as so modified, should be affirmed, with costs to plaintiff.

McNALLY, STEVENS, EAGER and STEUER, JJ., concur.

Judgment unanimously modified, on the law and on the facts, to the extent of deleting the injunctive provisions and of directing the Referee to determine the compensation to which plaintiff is entitled consistently with the opinion herein, and, as so modified, affirmed, with costs to plaintiff. Settle order on notice.