OPINION OF THE COURT
Shlomo S. Hagler, J.
*956 Defendant Cary Meyers moves for an order pursuant to CPLR 3212 for summary judgment “based on the fact that there exists no material fact requiring a trial on damages.” Plaintiffs South Pierre Associates and Urban Associates, LLC (SPA and UA or plaintiffs) oppose the motion and cross-move for an order pursuant to 22 NYCRR 130-1.1 granting plaintiffs an award of sanctions against the defendant for filing a frivolous motion. Defendant opposes the motion. Both the motion and cross motion are consolidated herein for disposition.
Background
SPA is the owner of a building located at 160 West 71st Street, New York, New York. UA is the managing agent SPA employed to manage the subject building. From September 1997 to April 2002, UA employed Meyers as the residential property manager of the subject building. Kurt Freisinger was the rent-stabilized tenant of record of apartment 17F of the subject building (subject premises) from on or about 1975 until November 12, 1989, when he died. From 1980 until Freisinger died, Stanley Mankowitz also known as Stanley Mann allegedly occupied the subject premises contemporaneously with Freisinger as a nontraditional family member.
After Freisinger’s death, Mankowitz admittedly forged Freisinger’s signature on rent-stabilized renewal leases and riders dated September 5, 1990, September 24, 1992, September 30, 1994, October 3, 1996, October 19, 1998, September 21, 2000 and October 2, 2002. Apparently, on advice of counsel, Mankowitz forged said renewal leases and paid the rent with money orders. Except for the last renewal lease, Meyers countersigned each renewal lease on behalf of the plaintiffs. Plaintiffs allegedly discovered in 2002 that Freisinger had died in 1989 and refused to countersign the October 2, 2002 renewal lease.
Thereafter, plaintiffs commenced a holdover proceeding under index No. L&T 51503/03 seeking to evict Mankowitz from the subject premises. Plaintiffs moved for summary judgment in the holdover proceeding. Mankowitz then cross-moved for summary judgment dismissing the proceeding. In support thereof, Mankowitz submitted an affidavit of Meyers, sworn to on January 19, 2005 (Itlf 9, 11), averring as follows:
“After Mr. Freisinger died I knew that Mr. Mankowitz continued to live in the apartment [subject premises]. After Mr. Freisinger’s death I decided not to commence an eviction proceeding against Mr. *957 Mankowitz because I knew that he and Mr. Freisinger had lived together as a gay couple for more than two years and that Mr. Mankowitz had a right to succeed to the apartment [subject premises].”
Subsequently, in his reply papers, Mankowitz submitted an additional affidavit by Meyers, sworn to on March 4, 2005 (1Í1Í18-19), in further support of the cross motion, averring as follows:
“I know that Mr. Mankowitz was signing Mr. Freisinger’s name on the renewal leases after Mr. Freisinger’s death but disregarded it because I knew that Mr. Freisinger and Mr. Mankowitz had lived together as a couple for many years. I also knew that, based upon my understanding of the law at the time, Mr. Mankowitz was entitled to remain living in the subject apartment after Mr. Freisinger’s death. “Therefore, I did not consider Mr. Mankowitz’s actions to be ‘fraud’ since I understood that he was entitled to succeed to Mr. Freisinger’s tenancy.”
Based on Meyers’ conduct, plaintiffs commenced this action in Supreme Court, New York County, under index No. 105682/
05, asserting five causes of action — fraud, breach of fiduciary duties, breach of employment agreement, breach of agent-principal relationship, and negligence. (See motion, exhibit A.) Defendant interposed a written answer to the complaint. (See motion, exhibit B.)
Subsequently, plaintiffs moved for summary judgment on their five causes of action. By decision and order dated January
6, 2006, the Honorable Leland DeGrasse granted plaintiffs partial summary judgment on the issue of liability as follows:
“Defendant’s argument that he believed Mankowitz had succession rights as Freisinger’s gay life partner is unavailing .... Defendant’s claim that he informed plaintiffs of Freisinger’s death is refuted by conduct in countersigning the forged lease renewals.
“The fiduciary relationship between plaintiffs and defendant imposed upon defendant a duty to disclose Freisinger’s death. His failure to make the disclosure is actionable as fraud ....
“The issue of liability is resolved in plaintiff’s [favor] with respect to the causes of action set forth in the complaint. An assessment of damage[s] shall be conducted upon filing a note of issue.” (See mo *958 tion, exhibit C.)
At the same time, Justice DeGrasse transferred this action from Supreme Court to the Civil Court pursuant to CPLR 325 (d). (See cross motion, exhibit E.)
In or about February 2006, defendant moved for reargument and/or renewal of Justice DeGrasse’s order based on the decision and order of the Honorable Timmie Erin Eisner dated December 21, 2005, wherein the court dismissed the holdover proceeding finding that Mankowitz was entitled to succeed Freisinger as the rent-stabilized tenant of record at the time of his death on November 11, 1989.* (See cross motion, exhibit D.) In a cogent decision, Judge Eisner discounted Mankowitz’s admitted forgery of at least six renewal leases as follows:
“Here, petitioner failed to prove any injury resulting from respondent’s misrepresentations. Respondent [Mankowitz] was entitled to succession rights prior to his signing of Mr. Freisinger’s name in the first renewal lease by virtue of his ten-year residence with Mr. Freisinger in the subject premises, coupled with his close emotional and financial interdependence with Mr. Freisinger. Furthermore, his reliance on the advice of counsel, which was given at a time the law relating to succession rights was unsettled at best, was understandable.” (Emphasis added.)
Summary Judgment
The movant has the initial burden of proving entitlement to summary judgment. (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851 [1985].)
“[T]he remedy of summary judgment is a drastic one, which should not be granted where there is any doubt as to the existence of a triable issue (Moskowitz v Garlock, 23 AD2d 943, 944) or where the issue is even arguable (Barrett v Jacobs, 255 NY 520, 522), since it serves to deprive a party of his [or her] day in court. Relief should be granted only where no genuine, triable issue of fact exists” (Broadway — 111th St. Assoc. v Morris, 160 AD2d 182, 185 [1st Dept 1990]).
*959 Arguments
Meyers relies on the above-underscored language of Judge Eisner’s decision and order as a basis for his summary judgment motion in that defendant contends that Judge Eisner resolved the issue of damages in his favor. Plaintiffs counter that this instant motion is improper because Meyers has a similar motion that is currently sub judice before Justice DeGrasse. Also, plaintiffs contend that notwithstanding Judge Eisner’s decision to dismiss the holdover proceeding, plaintiffs can still demonstrate their entitlement to damages including recapturing the compensation paid Meyers for the period of disloyalty and punitive damages.
Faithless Servant Doctrine
The faithless servant doctrine deals with the disloyal or “faithless” performance of employment duties. This doctrine has developed for more than a century and it is firmly grounded in the law of agency. (See Murray v Beard, 102 NY 505 [1886]; Restatement [Second] of Agency §§ 387, 390, 469 [1958].)
The Restatement (Second) of Agency prescribes the general principle that an agent has a duty of loyalty to the principal (§ 387); the agent must specifically disclose all pertinent facts to the principal (§ 390); and provides for damages for the breach of the agent’s duties to the principal (§ 469). The above sections state as follows:
“§ 387. Unless otherwise agreed, an agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency.”
“§ 390. An agent who, to the knowledge of the principal, acts on his own account in a transaction in which he is employed has a duty to deal fairly with the principal and to disclose to him all facts which the agent knows or should know would reasonably affect the principal’s judgment, unless the principal has manifested that he knows such facts or that he does not care to know them.”
“§ 469. An agent is entitled to no compensation for conduct which is disobedient or which is a breach of his duty of loyalty; if such conduct constitutes a wilful and deliberate breach of his contract of service, he is not entitled to compensation even for properly performed services for which no compensation is ap *960 portioned.”
In 1886, the Court of Appeals firmly established this agency principle as follows:
“An agent is held to uberrima fides in his dealings with his principal, and if he acts adversely to his employer in any part of the transaction, or omits to disclose any interest which would naturally influence his conduct in dealing with the subject of the employment, it amounts to such a fraud upon the principal, as to forfeit any right to compensation for services.” (Murray, 102 NY at 508.)
In E.W. Bruno Co. v Friedberg (21 AD2d 336 [1st Dept 1964]), the Appellate Division discussed the measure of damages to be awarded to the principal for the agent’s disloyalty as follows:
“ ‘Above all,’ it has been said of one in [the agent’s] position, ‘he should be candid with his employer and should withhold no information which would be useful to the employer in the protection and promotion of its interests’ (Community Counselling Serv. v Reilly, 317 F. 2d 239, 244). [The agent’s] concealment deprived plaintiff [the principal], intentionally, of the opportunity of setting matters right. We may not assume, in favor of the wrongdoer, that the cause was lost; rather should ‘ “every doubt and difficulty” ’ be resolved against him (Michel Cosmetics v Tsirkas, 282 NY 195, 203).” (21 AD2d at 340.)
Later, the Appellate Division, First Department, further clarified that the agent’s very act of disloyalty and not any resultant business loss by the principal may be sufficient to forfeit the agent’s right to compensation for the period of disloyalty as follows:
“ ‘The rigid rules . . . which bind an agent to the utmost fairness in his dealings with respect to his principal’s business are universal in their application and are well understood .... It has been said that the reason for these rigid rules respecting agents is that all temptation shall be removed from one acting in a fiduciary capacity to abuse his trust or seek his own advantage in the position which it affords him. (Meech. Agency, § 469.)’ (Reis & Co. v Volck, 151 App Div 613, 614-615, supra). This overriding consideration patently suggests that it is the disloyalty itself and not its consequences to the employer or principal which is to be condemned. It *961 is the disloyalty itself which bars the agent from compensation and the failure of the principal thus injured to prove direct damage to its business may not be availed of to restore such compensation (see 2 NY Jur, Agency, § 229; see, also, Bruno Co. v Friedberg, 21 AD2d 336).” (Feiger v Iral Jewelry, 52 AD2d 524, 525-526 [1st Dept 1976] [emphasis added]; see also Phansalkar v Andersen Weinroth & Co., L.P., 344 F3d 184 [2d Cir 2003].)
Punitive Damages
The general rule is that punitive damages may be awarded where the defendant’s conduct is directed at the public. (Rocanova v Equitable Life Assur. Socy. of U.S., 83 NY2d 603, 613 [1994].) However, this rule only applies in breach of contract cases, not in tort cases for breach of fiduciary duty. (Giblin v Murphy, 73 NY2d 769 [1988].) Specifically, “[p]unitive damages are allowable in tort cases such as this [breach of fiduciary duty] so long as the very high threshold of moral culpability is satisfied.” (Giblin v Murphy, 73 NY2d at 772.)
Discussion
Meyers’ argument that the language of Judge Eisner’s decision and order resolved the issue of damages in this action in his favor is misplaced. The language of Judge Eisner’s decision stated above is taken out of context as Judge Eisner referenced Riverton Assoc, v Knibb (11 Misc 3d 14 [App Term, 1st Dept 2005]) for the proposition that any fraud committed after the death of the tenant of record did not cause “petitioner any discernable prejudice in the prosecution of its eviction claim.” (Emphasis added.) Clearly, Judge Eisner never decided the issue of plenary damages as it relates to Meyers’ admitted breach of his fiduciary duty to the plaintiffs. Significantly, Judge Eisner’s decision in no way insulated Meyers from any damage plaintiffs may have suffered as a result of his disloyalty.
Quite to the contrary, Meyers’ faithless performance of his duties may subject him to severe penalties such as the forfeiture of all compensation plaintiffs paid for the period of his disloyalty. This is true even if plaintiffs cannot prove any direct damage or loss arising out of Meyers’ admitted culpable conduct. “Th[e] overriding consideration patently suggests that it is the disloyalty itself and not its consequences to the employer or principal which is to be condemned.” (Feiger v Iral Jewelry, 52 AD2d at 526.)
*962 Sanctions
Defendant’s filing of the instant motion for summary judgment was not frivolous even though he earlier filed a motion to reargue and/or renew Justice DeGrasse’s decision which granted plaintiffs partial summary judgment on the issue of liability. There is a distinction between the two motions. The instant motion accepts Justice DeGrasse’s ruling on liability, but nonetheless challenges the viability of plaintiffs’ claims for damages. However, the prior motion directly challenges the issue of liability without the superfluous discussion of damages. Both motions were permitted.
Next, the substance of the instant motion for summary judgment was also not frivolous. Judge Eisner’s decision may have provided a semblance of an argument that plaintiffs suffered no damages, which has been rejected by this court. Moreover, it appears that few practitioners are familiar with this somewhat complex area of law where the damages do not flow from the principal’s business losses, but may be awarded based on the disloyalty itself.
Conclusion
Based on the foregoing, both the motion and cross motion are denied.

 This decision and order should not be construed to determine the issue of Meyers’ liability which is sub judice before Justice DeGrasse.